UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| ANDREW P. FLOOD, | ) |
| | ) |
|     *Petitioner* | ) |
| | ) |
| v. | )    1:11-cv-32-DBH |
| | ) |
| PATRICIA BARNHART, | ) |
| | ) |
|     *Respondent* | ) |

### RECOMMENDED DECISION ON 28 U.S.C. § 2254 PETITION AND MEMORANDUM DECISION ON MOTION TO RECONSIDER REGARDING BAIL AND APPOINTMENT OF COUNSEL

Andrew Flood has filed a 28 U.S.C. § 2254 petition challenging the revocation of his probation on several convictions in the State of Maine.[1] Flood's request for habeas corpus relief in the federal forum from his state incarceration is barred by basic principles of federal habeas review of state-court adjudications. Flood also has filed a motion to reconsider bail pending the outcome of his § 2254 petition and to reconsider the denial of appointment of counsel. For the reasons that follow, I recommend that the section 2254 petition be denied, and I deny the other motions.[2]

---

[1] Flood has filed duplicate pleadings objecting to the State's motion to dismiss. Docket Nos. 18 & 19. The only distinction between these filings is the spacing, not the content. For purposes of page reference, I cite to the latter filing.

[2] Today I have also issued orders and a recommended decision in a 42 U.S.C. § 1983 action that Flood brought while this matter was still pending. *See Flood v. Maine Department of Corrections*, 1:11-cv-205-DBH.

## I. Legal Standard

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that … the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254 (b)(1)(A).[3]

The United States Supreme Court explained in *O'Sullivan v. Boerckel*:

> Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, we conclude that state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of *the State's established appellate review process*.

526 U.S. 838, 845 (1999) (emphasis added); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004).

## II. Factual Background

Flood was sentenced on June 7, 1999, after he pled guilty to 10 criminal counts that included charges of arson and burglary, criminal mischief, and theft.[4] Docket No. 15.[5] The presiding judge sentenced him to concurrent terms of imprisonment which worked out to a total sentence of 12 years with all but five suspended, and a following term of six years of supervised release. With respect to this sentence, as opposed to the revocation proceedings, Flood's judgments became final in November 1999, 90 days after the Sentence Review Panel denied Flood's application to appeal his sentence.[6]

On August 9, 2003, Flood was discharged from the unsuspended term of his sentence and began serving the six-year period of probation. In October 2007, a first motion to revoke his probation was filed. In due course, Flood changed his plea denying the allegations for the

---

[3] Subsection (b)(1)(B)(i) provides an exception for instances when there are no available state remedies. As discussed below, this is not such an instance. Subsection (b)(1)(B)(ii) is also not implicated in this proceeding; this is not a case in which "circumstances exist that render such process ineffective to protect the rights of the applicant."

[4] The precise definition and class of each count is not material to the disposition of this federal petition.

[5] All information about the state-court proceedings is taken from the state-court records that make up Docket Nos. 15-1 through 15-4.

[6] Flood did not file a direct appeal of his convictions.

revocation to an admission. In that February 2008 proceeding, an agreement was reached that Flood had violated at least one condition of his probation, and the court ordered Flood to complete the Differential Substance Abuse Treatment (DSAT) program in Bangor, Maine. Flood does not dispute that the sentencing on this violation was continued day-to-day, although he now takes umbrage with this approach because it left him vulnerable to future revocation and jail time.

>With regard to the tolling of a probationary period, Maine law provides:
>
>The running of the period of probation is tolled upon either the delivery of the summons, the filing of the written notice with the court that the person can not be located or the arrest of the person. If the motion is dismissed or withdrawn, or if the court finds no violation of probation, the running of the period of probation is deemed not to have been tolled. The conditions of probation continue in effect during the tolling of the running of the period of probation, and any violation of a condition subjects the person to a revocation of probation pursuant to the provisions of this chapter.

17-A M.R.S.A. § 1206(7-C).

A second motion to revoke Flood's probation was filed on October 29, 2009, which led to a January 25, 2010, sentencing hearing on the first motion to revoke and a hearing on the substance of the second motion to revoke. The presiding judge fully revoked the previously ordered period of probation and ordered Flood to serve five years of the previously suspended prison term. Although he had 21 days to do so, Flood did not file a notice of discretionary appeal to the Maine Law Court, the avenue of redress provided for by 17-A M.R.S.A. § 1207(2) and Maine Rule of Appellate Procedure 19.

In furtherance of his efforts to obtain post-conviction review of his probation revocation, Flood filed a state petition for post-conviction review describing his revocation attorney as ineffective within the meaning of the Sixth Amendment because he advised Flood to admit the

probation violations. This petition was summarily dismissed on December 8, 2010. The Maine Superior Court justice explained:

> While a claim of ineffective assistance of counsel ordinarily warrants assignment of a post-conviction petition if brought within the one-year limitations period, … a probation revocation proceeding is considered an "administrative disciplinary proceeding" and not a "post-sentencing proceeding" otherwise subject to collateral review under the post-conviction review statute. 15 M.R.S.A. § 2121(2). Consequently, to the extent the petitioner's claims relate to counsel's performance or the Court's findings during the January 2010 probation revocation proceeding, the petitioner's sole recourse would have been to file a direct appeal with the Law Court. *See State v. Collins*, 681 A.2d 1168, 1170 nn.5-6 (Me. 1996). The post-conviction review statute does not provide the Court with the ability to assign the instant petition on the grounds alleged.

Order to Summarily Dismiss Post-Conviction Petition (Doc. No. 4-20), at 2.

On October 8, 2010, Flood filed with the Maine Supreme Judicial Court a "Petition to take jurisdiction over the lower court for extraordinary circumstances to order the immediate release of a prisoner." In an October 15, 2010, order, the Maine Law Court observed:

> Here, the law provided a remedy to Flood: an appeal from the order revoking his probation. 17-A M.R.S.A. § 1207(2)(2009); M.R. App. P. 19. Flood could have raised the issue that his probation had expired in such an appeal. He did not. As a result, the Court does not have jurisdiction to issue the writ. Flood's failure to timely appeal from the order revoking his probation does not create jurisdiction in this Court to issue a writ of mandamus or habeas corpus.

Order Dismissing Petition (Doc. No. 4-19), at 2.

### III. Discussion

#### A. Section 2254 Petition and Motion to Stay

The two state court orders discussed above are central to the question of Flood's exhaustion of his state court remedies and the procedural default/independent-and-adequate-state-law-grounds analysis of 28 U.S.C. § 2254 review. *See Walker v. Martin*, __ U.S. __, 131 S. Ct. 1120 (2011); *Beard v. Kindler,* 558 U.S. __, 130 S. Ct. 612 (2009). On the face of his pleadings, it is not difficult to reach the conclusion that Flood has defaulted his challenge to the

4

revocation and that the state courts' determination on this score is an independent and adequate state law ground barring 28 U.S.C. §2254 relief. Because this is a federal review of state-court adjudication triggering comity concerns, Flood's arguments as to why he is entitled to federal review and relief from his conviction despite his failure to pursue the proper avenues of relief in the state judiciary should be reviewed carefully.

In addition to the 28 U.S.C. § 2254 petition, pending before this court is a motion to stay this action while Flood's other recently-filed challenges to his revocation are pending in state court. I note the following procedural history, as summarized by the State, that followed these two denials of review noted above:

> On November 23, 2010, Flood filed an improper Rule 35 motion for correction or reduction of sentence, which was dismissed on January 27, 2011.
> On December 17, 2010, Flood filed an improper petition for writ of *coram nobis*, which was dismissed on January 27, 2011.
> On January 27, 2011, Flood filed a second improper Rule 35 motion for correction or reduction of sentence, which remains pending.
> On January 27, 2011, Flood filed a second improper state petition for post-conviction review, which remains pending.
> On February 14, 2011, Flood filed an improper motion for contempt, which remains pending.

*See* Respondent's Motion to Dismiss (Doc. No. 14), at 4.

This series of rebuffed or pending motions and petitions in the state court are immaterial to the disposition of this 28 U.S.C. § 2254 petition because there was a clear adjudication by the post-conviction court and the Maine Law Court indicating that Flood was barred from advancing his challenges due to his failure to preserve his challenge to the revocation decision in the state courts through a timely 17-A M.R.S.A. § 1207(2) request for review. Although the above-referenced challenges in state court are pending, this is not a case in which a stay and abeyance is warranted. *See Rhines v. Weber*, 544 U.S. 269, 277-79 (2005) ("[S]tay and abeyance should be available only in limited circumstances. Because granting a stay effectively excuses a

5

petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines that there was good cause for the petitioner's failure to exhaust his claims first in state court.").

Responding to a strong dissent, the *O'Sullivan* majority addressed the intersection between exhaustion and procedural default and indicated that the court must "ask not only whether a prisoner has exhausted his state remedies, but also whether he has *properly* exhausted those remedies, *i.e.,* whether he has fairly presented his claims to the state courts." 526 U.S. at 848. *See also Olszewski v. Spencer*, 466 F.3d 47, 63 (1st Cir. 2006) (discussing independent and adequate state law ground for refusing to countenance a jury communication claim that was not raised in a post-direct appeal motion for a new trial); *Siebert v. Allen*, 455 F.3d 1269, 1271-72 (11th Cir. 2006) (procedural default on a statute of limitations state court determination).

Recourse through 17-A M.R.S.A. § 1207(2) is, on its face, the available remedy for Maine individuals challenging the revocation of their term of supervised release on a theory that the revocation decision itself was constitutionally flawed. There have been similar cases adjudicated in this district highlighting the necessity of exhausting proper state court remedies when challenging a probation revocation determination. *See Logan v. Maine*, No. 2:10–cv–00518–JAW, 2011 WL 1154184 (D. Me. Mar. 29, 2011); *see also Tilley v. Warden*, Civil No.10-118-B-W, 2010 WL 2757353, at *1 (D. Me. July 1, 2010) (recommended decision).

Flood did not pursue this avenue of relief, and his unsworn reply memorandum contains nothing that persuades me that he should be excused from his failure to properly exhaust his remedies under Maine law. Flood makes conclusory assertions about his attorney's failure to file a proper 17-A M.R.S.A. § 1207(2) appeal within the 21 days provided. However, there is no sworn statement that Flood actually asked his attorney to do so. Furthermore, he does not

6

explain what grounds he articulated to his attorney at that time that would have justified the appeal. *See Gaskins v. Duval*, __ F.3d __, __, 2011 WL 1380252, at *10 (1st Cir. Apr. 13, 2011) (discussing the cause and prejudice standard for overcoming a 28 U.S.C. § 2254 procedural default in a case invoking ineffective assistance of counsel); *accord Lynch v. Ficco*, 438 F.3d 35, 49 -50 (1st Cir. 2006) (same).[7]

Flood does not coherently argue that he did not engage in conduct that would have violated the terms of his release. His only tangible argument is simply that he was not on probation at the time of the conduct because his supervised release term had run; he insists that he was "released from imprisonment April 7[,] 2003[,] hence my probation expired no later than

---

[7] Flood cites *United States v. Hernandez-Ferrer*, 599 F.3d 63, 67 (1st Cir. 2010)("Assuming, without deciding, that the appellant was a fugitive, we nonetheless reject the government's asseveration that an offender's fugitive status tolls the running of a term of supervised release. We explain our reasoning below.") and *United States v. Ossa Gallegos*, 453 F.3d 371, 376-77 (6th Cir. 2006) ("[D]eported alien's supervised release may be tolled until he or she returns to this country."), *rev'd en banc*, 491 F.3d 537, 539 (6th Cir. 2007) ("[T]he statutory scheme evidences Congress's intent that the period of supervised release would not be tolled while the defendant is outside the United States as the result of deportation."). These cases address challenges by federal defendants in the federal court to supervised release determinations implicating tolling pursuant to specific federal supervised release statutory provisions. They are not premised on a constitutional analysis and are irrelevant to Flood's 28 U.S.C. § 2254 challenge. Even if there were some constitutional link to these decisions and Flood's state-statute-based supervised release determination, it would not alter my ultimate recommendation because of the overriding conclusion that there is an independent and adequate state law ground for denying Flood relief. With regards to the ineffective assistance of counsel overlay of Flood's § 2254 attempt to secure federal review of his claim despite his failure to properly exhaust his remedies, it would certainly overreach the limitations of *Strickland v. Washington*, 466 U.S. 668 (1984), review of counsel's performance to conclude that Flood's attorney should have attempted to persuade the Maine courts to apply the analysis of these cases to the Maine statute at issue.

This unsworn opposition memorandum includes the additional conclusory and unsubstantiated description of Flood's discontent with counsel:

> Counsel failed to point out to me or the court that it did not have authority to retroactively increase the statutory maximum period of probation, let alone without the incorporation of some form of due process. He misinformed me of the evidence, he did not call witnesses, or object to the state suppressing exculpatory evidence by way of a motion to quash. He did not question the Trial Court Justice[']s bias or abuse of discretion in revoking the probation term arbitrarily. He failed to protect me by providing me with the guiding hand of counsel and further he mislead me into believing that the evidence was not in my favor and I had to plead guilty to violations I had not committed and let the State convict me of charges that it did not prove by[] a preponderance of the evidence.

Petitioner[']s Objection (Doc. No. 19), at 2. This description of counsel's supposed failures during the revocation proceeding are immaterial to the question of whether or not Flood's attorney's performance can be a basis for concluding that there is cause for Flood's not pursuing his proper remedy vis-à-vis the revocation.

April 8[,] 2009[,] absent incarceration or absconding. I never absconded or was incarcerated prior to October 26[,] 2009, which at that point my term had expired." Petitioner[']s Objection at 3. Flood ignores the fact that he had a first revocation proceeding within the initial term of his supervised release that resulted in a continuation of sentencing day-to-day to accommodate his participation in the alternative substance abuse treatment program.[8]

I acknowledge that Flood sets forth the following rendition of fact:

> In December of 2010[,] I sent my lawyer, Mr. Davidson, at the proceeding a request for discovery again pleading that my one year was almost up.[9] He sent me the discovery and upon going over the evidence that[']s when I learned that he had failed to present it to me or the court. The urine test labeled negative (I was told there was traces of the alleged substances in both test[s] so by a preponderance of the evidence the State always wins.) And for the first time I saw the confidential document that was used on the 5th violation charge. I[']m not exactly sure if it was up to the prosecution, probation officer, or my lawyer to make the State drop the urines or documents after it was clear it was erroneous. But it appears there was a <u>Brady violation</u> because <u>exculpatory evidence was suppressed</u>.

Section 2254 Petition at 9 (emphasis in original). Flood does not elucidate or support this claim with an adequate description (let alone concrete documentation) of the alleged exculpatory evidence, and it is not clear to me what he means by the 'fifth' revocation charge since he has spoken of only two charges precipitating the revocation.[10] The onus of demonstrating cause and

---

[8] Flood asserts that this course effectively punished him twice for the same violation in September 2007. Section 2254 Petition at 10. He opines that the court, "apparently left the sentencing open even though [he] had been sentenced to 'no jail time only complete DSAT' to create its own tolling mechanism." *Id.* at 11. In a rather convoluted passage in his Section 2254 petition, Flood continues to insist that the second violation in October 2009 occurred outside the original probation term and, thereby, exceeded the statutory maximum. *Id.*

[9] Needless to say, this action by Flood on his case was well after the January 2010 revocation and the running of his 21 days to challenge the revocation.

[10] The 'explanation' that Flood provides is more confusing than elucidating. He writes:
> The State failed to drop the *Brady* violation urine test when it came back from the laboratory negative, used federally protected information to prosecute me, and charged me with two tests given to[o] close to one another (no grace period).
> Probation officer came to my home on Oct 24, 2009[,] urine tested me[,] failed to inform me I had failed then left without my seeing him take the urine

prejudice for his procedural default is entirely on Flood. Here, Flood admits that he does not even know who was responsible for not providing him with this supposedly exculpatory evidence.

### B. Motion to Reconsider Bail and Appointment of Counsel

Also pending is a motion by Flood to reconsider an order denying him bail during this 28 U.S.C. § 2254 proceeding and seeking appointment of counsel. Docket No. 16. In this pleading, Flood objects (despite the clear language of 17-A M.R.S.A. § 1206(7-C)) to the State's contention that his period of probation could be extended by tolling and insists that he "never inexcusably failed to comply with DSAT." *Id.* at 3. In this, his most recent pleading, Flood asserts, "The docket of the proceedings was simply left open to create a judicially contrived tolling mechanism." *Id.* He reiterates his belief that his probation terminated on April 8, 2009, at the latest, and that, when he was detained in October 2009, his probation had expired. *Id.* at 4.

Flood also continues to maintain that the state court had no jurisdiction over him when it sentenced him to serve five years of his suspended term. *Id.* at 5. Citing an attached letter from Karen Barbee of Eastport Health Care, Inc., he insists that he was going to graduate from DSAT and, while acknowledging that Barbee was concerned about his use of prescribed medications,

---

because he went into my bathroom and I thought dumped the test. On Oct 26[,] 2009[,] I went to Washington County Superior Court for (I guess was a DSAT check in to make sure I was attending). Please note here that the clerk entered those check[-]ins as sentencing hearings. Apparently to postpone the imposition of the imposition. Upon sitting through the morning awaiting my name being called for what was suppose[d] to be one of my last check[-]ins because I only had three sessions left before I completed DSAT, the P.O. took me out of the audience and took me downstairs to test me. That's when he informed me I had failed the test on the 24th and took me back upstairs and cuffed me and set me in back of the bar. He then presented the Court with a discovery of my failed tests and the Judge ordered me held on a probation hold.

*Id.* at 8-9.

Flood insists that, although this was perhaps a regrettable approach to addressing his situation, the prescriptions were entirely on the up-and-up. *Id.* at 3.

The bottom line, however, is that Flood had personal knowledge of these facts during the revocation proceeding and the 21 days that followed. He obfuscates by referencing his December 2010 realization that there was allegedly some sort of irregularity with his fifth testing result disclosure that amounted to a *Brady* violation. Under the circumstances of this case, there is no reason to reconsider the decision denying a federal order to allow bail with respect to his state incarceration or to appoint counsel.

### IV. Conclusion

For the reasons above, I recommend that the Court **DENY** Flood 28 U.S.C. § 2254 relief. I **DENY** Flood's motion to appoint counsel and to reconsider the denial of bail**.**

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 31st day of May, 2011.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge